## Boston Ins. Co. et al. v. Faulkner et al. (two cases).

(Decided Dec. 11, 1935.)

FRANK M. DRAKE and O. B. BERTRAM for appellants.

ABEL HARDING and FRED FAULKNER for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

These two appeals arise out of the same transaction, and a motion to hear them together has been sustained.

The appellees, Tye Faulkner, John Mills, and Frank Thomas, partners doing business under the firm name of Faulkner & Co., were the owners of certain tobacco which was stored in a warehouse in Campbellsville, Ky. They carried insurance on the tobacco in the sum of $3,500, represented by two policies; one for $1,000 issued by the Boston Insurance Company, and one for $2,500 issued by the North River Insurance Company. The tobacco was destroyed by fire on the night of June 13, 1933, while both of the policies were in force, and, the parties being unable to agree as to the amount of the loss, the appellees brought an action against each of the insurers for the face amount of its policy. The two cases were tried together, and the jury returned a verdict for the plaintiffs for the full amount claimed by them.

It is urged that there is no competent evidence to sustain the verdict, and that the plaintiffs failed to produce any satisfactory evidence as to the amount or value of the tobacco stored in the warehouse at the time of the fire. Appellees claimed that seventy-three hogsheads containing slightly more than 1,000 pounds of tobacco each were destroyed by fire, and that the tobacco was worth from 6 to 8 cents per pound. It was appellants' contention that appellees had stored in the warehouse, at the time of the fire, not more than thirty-five or forty hogsheads of tobacco, which was worth approximately 3 cents per pound. Tye Faulkner testified that Faulkner & Co. had seventy-three hogsheads of tobacco in the warehouse, averaging a little more than 1,000 pounds per hogshead. He stated that he knew the quality of the tobacco, and, while there was no established price on tobacco at that time of the year, it was worth, in his opinion, $6 to $8 per hundred pounds. He based his opinion on inquiries he had made, and on the cost of the tobacco. His testimony as to the value of the tobacco was objected to on the ground that his opinion was based on hearsay. He used the only means available to ascertain the market value of the tobacco, and his testimony under the circumstances was competent. D. T. Williams, a director of the corporation which owned the warehouse in which the tobacco

was stored, collected the storage. After stating that he was in the warehouse once or twice a week and knew about Faulkner & Co.'s tobacco, he said:

"I saw it, counted it one time, and Mr. Faulkner paid me storage. My best recollection is that he paid me storage for seventy-three hogsheads."

It is insisted that his statement that Faulkner paid him storage on seventy-three hogsheads was not competent as evidence as to the amount of tobacco on storage, but his statement taken as a whole simply means that he counted the hogsheads and that Mr. Faulkner paid him for the number of hogsheads found to be on storage, which was seventy-three.

The evidence shows that Faulkner & Co. purchased tobacco on the loose-leaf markets in Lebanon, Springfield, and Greensburg, in January and February, 1931, shipped it to Campbellsville, redried it, and put it in hogsheads for storage. They borrowed $3,309 from a bank in Campbellsville, which was used in purchasing and shipping the tobacco. Tye Faulkner testified that he spent more than $600 of his own money, and that the purchase of tobacco cost approximately $4,000 in the hogsheads in Campbellsville. There was evidence that the market price of the grade of tobacco purchased by Faulkner & Co. was the same in June, 1933, as it was during the year 1931. The defendants introduced as witnesses employees of the various warehouses where Faulkner & Co. purchased tobacco, to show the cost of the tobacco. According to the testimony of these witnesses, the cost ranged from $2.52 to $3.30 per hundred pounds. The testimony of these witnesses also disclosed that Faulkner & Co. purchased at four loose-leaf warehouses during January and February, 1931, 68,475 pounds of tobacco. They purchased tobacco at other warehouses, but the amount was not shown. Before the trial, defendants took Tye Faulkner's deposition as if on cross-examination, and he then testified that Faulkner & Co. purchased 81,000 pounds of tobacco during January and February, 1931. At the trial he produced a book containing a record of the purchases, referred to as the government book, which showed that Faulkner & Co. purchased 83,000 pounds of tobacco during January and February, 1931. A number of witnesses testified that the tobacco, at the time of the fire, was worth from $5 to $6 per hundred pounds. Their testimony was

objected to on the ground that they had not examined all of the tobacco, but had seen only samples from a few of the hogsheads. It was shown, however, that all of the tobacco was substantially the same, and that the samples fairly represented the entire lot. Mr. E. C. Franke, a dealer in tobacco, was introduced as a witness by the defendants. He testified that he examined the tobacco a short time before the fire, and it was offered to him for 5 cents per pound. He did not buy it, but stated that in his opinion that was a fair price for the tobacco. J. T. Pendleton, a tobacco dealer who had tobacco stored in the Campbellsville warehouse, stated that he had seen the Faulkner tobacco and that it was worth $8 per hundred pounds. Fleese Goode purchased all of the tobacco for Faulkner & Co., and later went to Campbellsville and graded it before it was placed in the hogsheads. He saw it as late as May, 1933, and testified that it was worth $6 per hundred pounds. There was an abundance of competent evidence as to both the quantity and value of the insured tobacco.

Appellants insist that the government book kept by appellees to show their purchases and sales of tobacco, and introduced in evidence by them, shows on its face that it had been mutilated and the figures altered. Two alleged changes are pointed out. The first entry in the book was made in September, 1930, and the book shows that there were no transactions during the months of September, October, November, and December. Page 9 of the record book is dated November, 1930, but no entries are made on that page. The next page provided for entries of purchases is dated November, 1931. It appears that the figure "0" has been erased and the figure "1" substituted therefor. The only notation on this page of the book is: "No business transacted." The alteration therefore is not material. The book shows that all of the purchases were made during January and February, 1931. 36,425 pounds of tobacco were purchased during January, 1931, and 46,305 pounds during February, or a total of 82,730 pounds. The eighth entry of January purchases shows that on January 30, 1931, the appellees purchased 3,775 pounds of tobacco at the Grower's Warehouse at Lebanon. It appears that the original entry was 1,775, and that the figure "3" has been written over the figure "1," making a difference of 2,000

pounds. At the trial, which occurred more than three years after the tobacco was purchased, Tye Faulkner, who made the original entries, was unable to explain the apparent alteration or to state whether or not it was a correction made at the time of the original entry. However, this change was comparatively inconsequential, and there is nothing to indicate that it was fraudulently made.

Finding no error prejudicial to appellants' substantial rights, the judgment is affirmed.

The second of the above styled appeals presents a novel question. During the trial of the action on the insurance policies, it developed that appellees had filed in the office of the United States collector of internal revenue two books containing records of their dealings in tobacco prior to and subsequent to the dealings shown by the book introduced in evidence. Tye Faulkner testified that these books contained no entries concerning the insured tobacco. After the trial and after the motion for a new trial had been overruled, the attorney for the insurance companies, conceiving that these books might show sales of a portion of the tobacco purchased by appellees during January and February, 1931, and thus afford a basis for an action for a new trial under sections 340 and 518 of the Civil Code of Practice on the ground of newly discovered evidence, requested the government official having custody of the records to permit him to inspect them. Appellants' attorney was denied the privilege of examining the records except upon order of the appellees, and thereupon he made written request of the defendants and their counsel for the necessary order, but the request was ignored. The insurance companies, defendants in the original action, then brought an action against the members of the firm of Faulkner & Co. to compel them to give the necessary order to enable plaintiffs to obtain access to the records which had been filed by Faulkner & Co. in the office of the collector of internal revenue. A demurrer to the petition was sustained and, from the judgment dismissing the petition, the plaintiffs have appealed.

The petition sets out in substance the facts stated above, and then continues:

"Plaintiffs state that, as a result of the se-

questration of said records and the failure to produce same at the trial of said actions, and the subsequent refusal of defendants to give an order permitting plaintiffs or their counsel to examine same, plaintiffs believe and have reason to believe that there is something in said Government books which show that the quantity of tobacco on hand at the time of said fire was less than the quantity claimed in the trial of said actions and testified to by the plaintiffs therein (defendants here), and that if said records could be examined they would contradict the testimony of plaintiffs (defendants here) as to the quantity of tobacco on hand destroyed in said fire and the said records would constitute valuable evidence on behalf of these plaintiffs on another trial of said actions.

"Plaintiffs state that they are unable to seek a new trial at this time, or to make the necessary affidavits or file the necessary pleadings to support a motion for a new trial for newly discovered evidence, because they are not in possession of facts sufficient to know what evidence may be disclosed by an examination of said Government books; and plaintiffs further state that they are at this time merely seeking the right to examine said books to ascertain whether said books do constitute a record which would furnish newly discovered evidence which would then become grounds for a motion for a new trial for said reason."

The existence of the two books in question and the disposition that had been made of them were disclosed at the trial of the original action, and appellants were then in possession of all of the facts upon which they are now relying for the relief sought by them. The trial court, no doubt, upon proper showing, would have sustained their motion for a production of the records by means of a subpœna duces tecum, and, under the circumstances, we do not think the appellants have shown proper diligence in their effort to obtain access to the records in question. We are not to be understood as approving the actions of the appellees in refusing appellants permission to inspect the records, but we are of the opinion that appellants have failed to make a showing authorizing the relief asked for.

The judgment is likewise affirmed.